

RETAIL INSTALLMENT CONTRACT
**CREDIT SALE CONTRACT OR ADD-ON RIDER**

This Credit Sale Contract or Add-On Rider ("Credit Sale Contract" or "Agreement") provides the terms that the buyer named below (referred to as "you" "your," or "Buyer") agrees to purchase the tools, equipment and other merchandise listed under "Property Description" or on attached invoice or appendix from an authorized Snap-on Tools Company LLC Franchisee, Authorized Dealer or Snap-on sales representative ("Dealer"). **BUYER REPRESENTS AND WARRANTS THAT THE PROPERTY PURCHASED UNDER THIS AGREEMENT IS TO BE USED PRIMARILY FOR COMMERCIAL OR BUSINESS PURPOSES AND NOT PRIMARILY FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.**

SEE APPENDIX A, INVOICE NO. 88422   DATED 01/14/2011
FOR "PROPERTY DESCRIPTION"

Dealer Number  11596
Contract Date:  01/14/2011
Debtor Number

## ITEMIZATION OF TOTAL CREDIT SALE PRICE
(Time Price Disclosure)

1. **Total cash sale price** (including tax, if any):  $ 5910.50
2. Amount of down payment and/or trade-in
   a. Down Payment  $ 0.00
   b. Trade-in (Description of trade-in items  $ 2155.00
      are on the attached invoice or Appendix A)
   c. Total Down Payment (2a + 2b):  $ 2155.00
3. Unpaid balance of total cash sale price:  $ 3755.50
   (Total cash sale price – total down payment)
4. Security Interest Charge
   a. Public officials and/or process costs:  $ 35.00
   b. Florida Document Stamp Tax:  $ 0.00
      (Florida Residents Only)
   c. Processing Fee:  $ 0.00
   d. Total Security Interest Charge (4a+4b+4c)  $ 35.00
5. Subtotal Principal Balance (new sale amount financed):  $ 3790.50
   (Unpaid balance of total cash sale price + Total
   Security Interest Charge)
6. Unpaid Balance:  $ 0.00
   (Payoff of prior Credit Sale Contracts, Add-on Rider(s),
   and prior Extended Credit Purchase Money
   Security Agreements)
   Beginning Date on 1st Credit Sale Contract
7. Other Charges (specify):  $ 0.00
8. New Amount Financed:  $ 3790.50
   (Subtotal Principal Balance + Unpaid Balance +
   Other charges) (Note: finance charges will not be charged
   on accrued but unpaid finance charges. See Section 2 below.)
9. Amount of Finance Charge (estimated):  $ 1597.74
10. TOTAL OF PAYMENTS (estimated)  $ 5388.24
    (New Amount Financed + Amount of Finance Charge)
11. TOTAL CREDIT SALE PRICE (estimated)  $ 7543.24
    (Total of Payments + Total Down Payment)

## YOUR PAYMENT SCHEDULE WILL BE:

**Number of Payments**  156

**Payments Due Each**  WEEK

**Payment Amount**  $ 34.54

**1st Payment Due Date**  01/21/2011

**ANNUAL PERCENTAGE RATE**  24.900 %
The cost of your credit as a yearly rate

**Amount Financed**  $ 3790.50
(sum of 5, 6, and 7) The amount of credit
provided to you or on your behalf:

**FINANCE CHARGE**  $ 1597.74
The estimated dollar amount
the credit will cost you

**Total of Payments**  $ 5388.24
(sum of 8 and 9) The estimated amount
you will have paid after you make
all the payments on time

**Total Credit Sale Price**  $ 7543.24
(sum of 2c and 10)
The total estimated cost of
your purchase on credit

**Insurance:** Credit life insurance and credit disability insurance are **not** required to obtain credit. You may obtain property insurance from anyone you want who is acceptable to Dealer's assignee, Snap-on Credit LLC. Insurance, if any is included in this contract, does not provide coverage for personal liability or property damage caused to others.

**Security:** You are giving a security interest in (a) the goods or property being purchased under this Agreement and any prior Agreement; and (b) if permitted by law all other goods or property bearing any Snap-on® trademark, or distributed by or through Snap-on Incorporated or an affiliate.

**Late charge:** If a payment is late, you will be charged $10.00 or if less, the maximum amount permitted under applicable law.

**NSF charge:** If you make a payment by check or debit and that payment is denied by your bank for insufficient funds or any other reason, then you will owe not only the payment but also an NSF charge of $25, but not more than the maximum amount permitted under applicable law.

**Prepayment:** If you pay off early, you will not pay a penalty and you may be entitled to a refund of part of the finance charge. Your finance charges are calculated based on your average daily outstanding balance due.

**Add-On Rider:** If you have an unpaid balance on any Prior Agreement, Credit Sale Contract or Add-On Rider(s), then this Agreement is also an Add-On Rider to the prior Agreement(s). See below for additional information about any Add-On Rider.

**SEE BELOW AND ON ADDITIONAL PAGES** for additional terms and information about nonpayment, default, and repayment in full before the scheduled date, and prepayment refunds and penalties.

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT SIGNED BY YOU AND THE FRANCHISEE, DEALER OR SNAP-ON TOOLS COMPANY LLC OR ITS AFFILIATE THROUGH THEIR SALES REPRESENATIVE (COLLECTIVELY REFERRED TO IN THIS AGREEMENT AS "DEALER") OR, IF ASSIGNED, WITH SNAP-ON CREDIT LLC ("SNAP-ON CREDIT") OR ITS ASSIGNS.**

## ADDITIONAL TERMS

1. **Offer of Cash Sale or Payment Over Time.** Dealer has offered you a choice of buying the Property for a stated cash price payable immediately or buying the Property for a Total Credit Sale Price which permits you to purchase the Property now, but pay in installments over an extended period of time. The Total Credit Sale Price will be more or less, depending on when you pay and the amount you pay each time, and the Total Credit Sale Price is more than the cash sale price because it includes a finance charge to compensate the Dealer for waiting before collecting the full purchase price.
2. **Payment Terms.** *You agree to pay to Dealer or Dealer's assignee the Amount Financed plus finance charges applied to the outstanding balance thereof at the annual percentage rate set forth on page one during the time any balance under this Agreement remains unpaid. You agree to make equal weekly payments (or such other periodic payment schedule if specifically agreed in writing) (in cash, check or money order) as set forth under "Your payment schedule will be" on the first page of this Agreement until all amounts due under this Agreement are paid (provided that the final payment shall be in the amount of the unpaid balance of the Amount Financed plus accrued but unpaid finance charges).* You may prepay the balance of the Amount Financed without penalty at any time; and doing so will reduce the amount of finance charge you would otherwise be required to pay. Unless you prepay the entire outstanding balance of the Amount Financed, however, the amount you are required to pay each week will remain the same, with any adjustments being reflected in the last payment and in the number of payments. If you make an overpayment when you prepay the entire outstanding balance of the Amount Financed, we will not be required to refund amounts less than $1.00. If you pay the amount due under this Agreement late, the finance charge will continue to accrue monthly on the unpaid average daily balance. In that event, your last payment may be increased to pay the full balance due. Dealer may offer a deferred first payment due date; however, the estimated Finance Charge and the number and amount of payments on the first page of this Agreement are based on payments beginning immediately after the date of this Agreement. If you elect to defer your payments, you will not be charged late fees, but finance charges will continue to accrue on the unpaid balance, and you will owe additional finance charges that may not be reflected in the estimate on the first page. You and your Dealer may agree to transfer to the Amount Financed any balance you may owe Dealer as a result of prior purchases pursuant to your truck account or revolving account ("RA") credit that Dealer has extended to you. You represent, warrant and agree that: (a) you are justly indebted to Dealer for the full amount of the Amount Financed plus finance charges accruing on it; (b) all information supplied and statements made by you in any application for credit before or at the same time as the execution of this Agreement are and will be correct, complete and genuine, (c) you only owe the dealer for any prior purchases being transferred from RA and have no other liens and encumbrances on the RA tools and equipment being pledged as security under this Agreement, and (d) any items used as a trade-in are free of all liens or other encumbrances, are fully paid for, and you possess good and marketable title to it. The Unpaid Balance under any prior Agreement, including accrued but unpaid finance charges, is used to calculate your payment amount; however, you will pay finance charges only on the outstanding principal balance (cash price) of the Amount Financed.
3. **Allocation of Payments.** Your payments will be allocated first to any additional charges, costs and expenses, and then to any finance charge in the order it is incurred, and then to the payment of the cash price of each purchase in the order in which the purchase was made under prior agreements (Credit Sale Contract or Add-On Riders) first and then this Agreement, with the payments being applied to the oldest purchase first; lowest-priced same day purchases paid off first. Down payments and trade-ins will be applied to the cash price of all items purchased on the same day, credited based upon the lowest-priced purchases first.
4. If this is an ADD-ON RIDER: You agree to purchase the additional Property listed in the "Property Description" referred to above, Appendix A, any attachment(s) and any invoice(s) and to pay for such Property as well as the Property purchased under the prior Agreement(s) according to the payment terms listed in <u>this</u> Agreement. If the prior Agreement(s) to which this Add-On Rider relates has/have been assigned to Snap-on Credit LLC ("Snap-on Credit"), then this Add-On Rider is also assigned to Snap-on Credit and all references to Dealer are to Snap-on Credit as Dealer's Assignee.
5. **Grant of Security Interest.** As security for your obligations under this Agreement, or any other agreement with Dealer or Dealer's assignee, you hereby grant Dealer a purchase money security interest in each item of Property you purchase under this Agreement until that item is paid for. As further security for your obligations under this Agreement, in all states except where prohibited by applicable law for agreements of this type, you hereby grant Dealer a security interest in each other item of tools, goods and equipment previously purchased or hereafter acquired from a Snap-on Dealer, and any and all goods and equipment manufactured or distributed by Snap-on Incorporated or bearing Snap-on Incorporated trademarks or logos, together with all proceeds (including insurance proceeds), accessions, attachments, additions, substitutions and replacements to and of such items (the foregoing and the Property are collectively referred to as "Collateral"). If this Agreement is assigned to Snap-on Credit pursuant to Section 6 below, and if the Amount Financed includes a transfer of RA balance owed to Dealer, then Dealer hereby assigns to Snap-on Credit any purchase money security interest that Dealer may have in any merchandise reflected in the RA balance so transferred. In such case, Snap-on Credit shall continue to hold a purchase money security interest in such merchandise after such transfer. You agree not to remove any Collateral from the state where the original sale was made without the written consent of Dealer or Snap-on Credit, if this Agreement is assigned to Snap-on Credit. You agree not to sell, dispose of or encumber any Collateral until your entire balance due is paid in full. To the extent permitted by and subject to applicable law, you agree and hereby grant to Dealer and Snap-on Credit or its agent or assigns the power of attorney and right to sign on your behalf and file or record such financing statements or other documents as may be necessary to perfect or maintain the security interest granted by you under this Agreement.
6. **Assignment by Dealer.** (a) Dealer may assign this Agreement for value to **Snap-on Credit LLC, 950 Technology Way, Suite 301, Libertyville, IL 60048**. If Dealer assigns this Agreement to Snap-on Credit, then after such assignment (1) Snap-on Credit or its assigns shall have all the rights and remedies of Dealer under this Agreement and all of your obligations, agreements, representations and warranties shall be deemed to have been made to Snap-on Credit with the same effect as if Snap-on Credit were an original party to this Agreement; and (2) Dealer will not have any power or authority to exercise any such rights or remedies, give any consents under Section 5 or change or modify this Agreement or any related document in any way. (b) If this Agreement is assigned to Snap-on Credit, you agree to deliver your payments to Dealer or directly to Snap-on Credit. *The Dealer is not Snap-on Credit's agent for any purpose.* If you make payments to your Dealer, the Dealer will be acting as your agent. In that capacity, the Dealer has agreed with Snap-on Credit to remit payments under this Agreement to Snap-on Credit on a regular basis. You will be credited with payment on the date Snap-on Credit receives payment from the Dealer. Payments received by Snap-on Credit after 10:00 a.m. CST will be credited on the next business day. Snap-on Credit will credit you and waive additional finance charges and late charges on any installment regardless of when payment is received from the dealer *if you have proof of your timely payment to the Dealer* (such as a valid receipt or canceled check). Alternatively, you may make any payments (by debit, check or money order payable to Snap-on Credit, and not cash) directly to Snap-on Credit at the address provided to you by Snap-on Credit, in which case you will be credited with payment on the date Snap-on Credit receives the payment. Snap-on Credit may require you to make payments directly to it. Snap-on Credit's business days are Monday through Friday, excluding holidays.
7. **Property Insurance.** So long as Dealer or its assigns has a security interest in any Collateral, you will obtain and keep in force fire and other casualty Insurance on the Collateral in an amount and form and written by insurers satisfactory to Dealer, with loss payable to Dealer or Dealer's assignee. If you fail to do so, Dealer or its assigns may, at their option, purchase such insurance, in which event you must pay the cost thereof to Dealer or its assigns on demand. However, any failure by Dealer to obtain and keep in force such insurance, after your failure to do so, shall not release you from any obligations or liability under this Agreement or any prior agreements. *Any insurance procured by Dealer under this section will not include insurance for property damage to others.*
8. **Additional Charges.** To the extent permitted by and subject to applicable law, you agree to pay the additional charges listed below. If a fee is not assessed, Dealer does not waive the right to insist on strict compliance with this Agreement by you at any time. **(a) Security Interest Charges.** You will be assessed a Security Interest Charge to cover (1) fees and charges paid to public officials for determining the existence of or for perfecting, releasing or satisfying the security interest you granted under this Agreement, (2) the costs payable for any outside service retained to provide searches and filings for perfecting and verifying the security interest and (3) in certain states (depending on state rate limits and rate calculations) we may also charge an amount to recoup a portion of our production and management costs related to maintaining security interest transactions, not to exceed $15.00. **(b) Late Charges.** If you fail to make payments under this Agreement within 10 days after the date due, you may be assessed a Late Charge of the lesser of: $10.00 or the maximum permitted by applicable law. **(c) NSF Check Charges.** If your check is not paid by your bank because of non-sufficient funds, a closed account, or any other reason, you may be assessed an NSF Check Charge of the lesser of $25.00 or the maximum permitted by law. **(d) Legal Fees.** In addition to the full amount owed and any court costs, if any matter arising out of your default under this Agreement is referred to an attorney to collect the amount you owe or to repossess any Collateral, you agree to pay all costs and expenses (including all actual and reasonable attorneys' fees and costs) incurred by us in enforcing any of the terms of this Agreement or any of our rights against you. **(e) Extension fees.** In the event we provide you a contract term modification or payment extension at your request or as part of another type of payment arrangement, we reserve the right to charge a one time extension fee of the lesser of $30.00 or the maximum amount allowed by law to offset a portion of our costs associated with such change. **(f) Other Considerations.** We reserve the right to charge additional fees as appropriate in the event the parties agree to other contract modifications.

9. **Events of Default.** The occurrence of any one of the following events constitutes a default under this Agreement: (a) You do not pay at least the minimum payments due or you otherwise become delinquent on any other obligation to Dealer or to Snap-on Credit or its assigns, or if this Agreement is assigned, to such assignee; (b) you file or consent to the filing of bankruptcy or similar proceedings against you or you become insolvent, or your financial condition deteriorates significantly and it appears likely that you will not be able to repay Dealer for any reason; (c) you die, become imprisoned or are declared legally incompetent; (d) you at any time give Dealer information that is inaccurate, misleading or incomplete; or (e) you fail to comply with any terms or conditions of this Agreement.
10. **Acceleration; Remedies.** Dealer, or if assigned, Dealer's assignee will have all the rights and remedies of a secured creditor under the Uniform Commercial Code and any other applicable laws. In addition, if any one of the events of default occurs, subject to any right you may have under applicable law to receive notice of and to cure such default, at Dealer's option Dealer may (a) declare the entire unpaid balance due under this Agreement immediately due and payable; and (b) repossess any Collateral in which Dealer still retains a security interest, and without limiting the foregoing, in the event this or any other transaction is assigned, any Collateral in which assignee still retains a security interest but only in the manner and to the extent permitted by applicable law. If Dealer resells any repossessed Collateral, Dealer agrees to pay you any surplus remaining (after deduction of the costs of repossession and sale and other costs, including reasonable attorneys' fees, to the extent permitted by law) and you agree to pay Dealer any deficiency in accordance with the Uniform Commercial Code. Dealer may accept late or partial payments or any payments marked as being payment in full or as being settlement for any dispute <u>without</u> prejudicing any of Dealer's rights under or in any way amending this Agreement. Dealer's failure or delay at any time to exercise any of Dealer's contract, legal or equitable rights shall not be deemed a waiver of these rights nor of the right to exercise Dealer's rights at any other time. If Snap-on Credit becomes the secured party under this Agreement, you agree that it is commercially reasonable for repossessed Collateral to be sold at public or private sales (in any state or county selected by Snap-on Credit) to dealers or others in lots or pieces (with or without the Collateral being physically present) at used tool prices. In the event you do not pay all amounts due under this contract and you are unreachable, or in the event of settlement or other events, IRS regulations may require Dealer to file a 1099-C form for informational purposes showing the remaining unpaid amounts due under your original contract regardless of any dispute. The mere filing of such 1099-C does not itself constitute a forgiveness or adjustment of any amounts due. The term "Buyer" and "Dealer" as used in this Agreement also mean "debtor" and "secured party" respectively and include heirs, executors, or administrators, successors and permitted assigns of those parties.
11. **Governing Law.** THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS, THE ASSIGNEE'S STATE; PROVIDED, HOWEVER, IN THE EVENT THIS AGREEMENT OR ANY OF ITS PROVISIONS CANNOT BE ENFORCED UNDER ILLINOIS LAW, THEN THE LAWS OF THE STATE OR OTHER LOCALITY WHERE YOU RESIDE SHALL GOVERN. YOU AND DEALER WAIVE ALL RIGHTS TO A TRIAL BY JURY. If used in U.S. Territories or Commonwealths, this Agreement is not be governed by the United Nations Convention on Contracts for the International Sale of Goods.
12. **Transfer of Agreement.** Dealer reserves the right to sell or transfer this Agreement in whole or in part to another entity or person without prior notice to you. You, however, cannot transfer this Agreement or rights and obligations under this Agreement to any other entity or person.
13. **Severability; Entire Agreement.** If any term, provision or section of this Agreement is held void, voidable, invalid or unenforceable under any statute or court decision, or any governmental rule or regulation, the remainder of the Agreement shall remain effective, and any such ineffectiveness shall not affect the validity or enforceability of this Agreement in any other jurisdiction. This Agreement, any previous Credit Sale Contract, Add-On Riders and, any written addenda or riders hereto signed by both parties constitutes the entire agreement between the parties regarding the subject matter of this Agreement.
**Notice to Maryland Residents.** Agreement is pursuant to Subtitle 10 (Credit Grantor Closed End Contract Provisions) of Md. Code Ann., Fin. Inst. §12-100 *et seq.*
~~Notice to California Residents. California Finance Lenders License No. 603-6860~~
**Notice to District of Columbia Residents**: Seller certifies that the information contained in the contract complies with the District of Columbia Municipal Regulations, Title 16, Chapter 3.
**Notice to Connecticut Residents**: Attorneys' fees, which are permitted under Sections 8 and 10 of this Agreement, may not exceed 15% of the amount due plus court costs, and may only be collected or sought from Connecticut Residents when the contract is referred to an attorney, not a salaried employee of the holder of the contract, for collection. Late charges may not exceed the lesser of 5% of the past due installment (whether weekly or monthly) or $10.00.

IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT SIGNED BY YOU AND THE DEALER OR SNAP-ON TOOLS COMPANY LLC OR ITS AFFILIATE THROUGH THEIR SALES REPRESENATIVE (COLLECTIVELY REFERRED TO IN THIS AGREEMENT AS "DEALER") OR, IF ASSIGNED, WITH SNAP-ON CREDIT LLC ("SNAP-ON CREDIT") OR ITS ASSIGNS.

## BUYER ACKNOWLEDGES RECEIPT OF PRODUCT AND A COPY OF THIS AGREEMENT

### NOTICE TO BUYER

DO NOT SIGN THIS CONTRACT (CREDIT SALE CONTRACT OR ADD-ON RIDER) BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THE CONTRACT WHEN YOU SIGN IT. YOU HAVE THE FOLLOWING RIGHTS, AMONG OTHERS:
    (a) TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND OBTAIN A PARTIAL REFUND OF ANY UNEARNED FINANCE CHARGE;
    (b) TO REDEEM THE PROPERTY IF REPOSSESSED FOR A DEFAULT;
    (c) TO REQUIRE, UNDER CERTAIN CONDITIONS, RESALE OF THE PROPERTY IF REPOSSESSED.

| DEALER (SECURED PARTY) | BUYER (DEBTOR) |
|---|---|
| CIC Live Signature<br>MICHAEL D. WILLIAMS<br>12:05:18 PM 01-14-2011 (-06'00' GMT)<br>I, MICHAEL D. WILLIAMS, am signing to certify the authenticity of this document | CIC Live Signature<br>ANDREW M DUNCAN<br>12:05:34 PM 01-14-2011 (-06'00' GMT)<br>I, ANDREW M DUNCAN, acknowledge this document to confirm it has been reviewed |
| MICHAEL D. WILLIAMS | ANDREW M DUNCAN |
| 2532 E 43RD AVE | 11116 W GRANT |
| HUTCHINSON, KS 67502 | WICHITA, KS 67209 |

Dealer assigns for value all right, title and interest in this Agreement to **Snap-on Credit LLC**, subject to acceptance by Snap-on Credit LLC. By providing the information on the unpaid balance due under any prior Agreement, Credit Sale Contract or any Add-On Rider(s) above for this transaction, Snap-on Credit LLC consents to the rescheduling of payments under the Credit Sale Contract and any Add-On Rider(s) previously assigned to Snap-on Credit LLC.

Snap-on Credit LLC - 950 Technology Way, Suite 301 - Libertyville, IL 60048 - (877)777-8455

# APPENDIX A
## "Property Description"

INVOICE DATE 01/14/2011  INVOICE NUMBER 88422  DEBTOR NUMBER

Dealer  Buyer (Debtor)
MICHAEL D. WILLIAMS  ANDREW M DUNCAN

Invoice Subtotal $ 3500.00   Total R/A Transfer $ 0.00   Shipping/Handling $ 0.00

Tax Applied $ 255.50   Invoice Total $ 3500.00   S/H Tax $ 0.00

Total Including Tax $ 3755.50

| Line | QTY | PRODUCT NO. SERIAL NO. | DESCRIPTION | EACH | COMMENTS | LC | LINE TOTAL |
|---|---|---|---|---|---|---|---|
| 1 | 1 | KRL722BPKS p507933a | 2BK RC W 2 FW DRWS A | 5655.00 | 0.00 | 10 | 5655.00 |
| 2 | -1 | USEDTOOLBOX | | 1905.00 | 0.00 | 8 | -1905.00 |
| 3 | -1 | ECREBATE250 | EC INSTANT REBATE 25 | 250.00 | 0.00 | 8 | -250.00 |

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Phone: 800-331-3282  Fax: 818-662-4141

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

CT Lien Solutions
P.O. Box 29071
Glendale CA, 91209-9071

26915380
KSKS

12834 -
File with: Secretary of State, KS

CT Lien Solutions
Representation of filing

**This filing is Completed**
File Number : 70874800
File Date : 14-JAN-2011

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| DUNCAN | ANDREW | M | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 11116 W GRANT | WICHITA | KS | 67209 | USA |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

(blank)

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

**3a. ORGANIZATION'S NAME:** SNAP ON CREDIT

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 950 TECHNOLOGY WAY, SUITE 301 | LIBERTYVILLE | IL | 60048 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**
Purchase Money Security Interest in automotive tools and equipment, more specifically, listed on Credit Sales Contract or Equipment Lease No. listed below. In addition to the purchase money security interest granted in the collateral listed on the referenced, the collateral shall include all items of tools and equipment of Debtor, whether now owned or hereafter acquired, which were acquired from a Snap-on Dealer, and any and all goods and equipment manufactured or distributed by Snap-on Incorporated or any of its affiliates, or bearing the Snap-on or Sun Electric trademarks or logos, together with all proceeds (including insurance proceeds or claims), accessions, attachments, additions, substitutions and replacements to and of such items (the foregoing and the collateral listed on the referenced Credit Sales Contract or Equipment Lease are collectively referred to as "Collateral"). Credit Sales Contract No.            ase Money Security Interest in automotive tools and equipment, more specifically, listed on Credit Sales Contract or Equipment Lease No. listed below. In addition to the purchase

**8.OPTIONAL FILER REFERENCE DATA**
26915380            DSSPH

FILING OFFICE COPY - UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Prepared by CT Lien Solutions [3.23.0]

Case 15-10116  Doc# 35-1  Filed 04/23/15  Page 5 of 6

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

9a. ORGANIZATION'S NAME

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
|---|---|---|
| DUNCAN | ANDREW | M |

**10. MISCELLANEOUS:** 26915380-KS-0   12834 -
SNAP ON CREDIT

File with: Secretary of State, KS   DSSPH

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one name (11a or 11b) - do not abbreviate or combine names

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 11d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**12.** ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)

12a. ORGANIZATION'S NAME

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.

**14.** Description of real estate:

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**16. Additional Collateral description:**
money security interest granted in the collateral listed on the referenced, the collateral shall include all items of tools and equipment of Debtor, whether now owned or hereafter acquired, which were acquired from a Snap-on Dealer, and any and all goods and equipment manufactured or distributed by Snap-on Incorporated or any of its affiliates, or bearing the Snap-on or Sun Electric trademarks or logos, together with all proceeds (including insurance proceeds or claims), accessions, attachments, additions, substitutions and replacements to and of such items (the foregoing and the collateral listed on the referenced Credit Sales Contract or Equipment Lease are collectively referred to as "Collateral"). Credit Sales Contract No

**17.** Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decendent's Estate

**18.** Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction
☐ Filed in connection with a Public-Finance Transaction

Prepared by CT Lien Solutions [3.23.0]

FILING OFFICE COPY - UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/21/09)